UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

\*\*\*

DARNELL Q. BROCKINGTON,

                    Plaintiff,

vs.

DISTRICT ATTORNEY STEVEN B. WOLFSON, et al.,

                    Defendants.

Case No. 2:22-cv-00840-APG-VCF

ORDER

APPLICATION TO PROCEED IN FORMA PAUPERIS (EFC NO. 1) AND COMPLAINT (ECF NO. 1-1)

      Pro se Plaintiff Darnell Q. Brockington filed an application to proceed in forma pauperis (IFP) and a complaint. ECF Nos. 1-1. I grant Plaintiff's application to proceed in forma pauperis. ECF No. 1. I dismiss his complaint without prejudice. ECF No. 1-1.

DISCUSSION

      Plaintiff's filings present two questions: (1) whether Plaintiff may proceed in forma pauperis under 28 U.S.C. § 1915(e) and (2) whether Plaintiff's complaint states a plausible claim for relief.

      I.      Whether Plaintiff May Proceed In Forma Pauperis

      Under 28 U.S.C. § 1915(a)(1), a Plaintiff may bring a civil action "without prepayment of fees or security thereof" if the Plaintiff submits a financial affidavit that demonstrates the Plaintiff "is unable to pay such fees or give security therefor." If the Plaintiff is a "prisoner" as defined by 28 U.S.C. § 1915(h), as amended by the Prison Litigation Reform Act ("PLRA"), he remains obligated to pay the entire fee in installments, regardless of whether his action is ultimately dismissed. See 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Under the PLRA, a prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the six-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court must assess an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. See 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner must collect subsequent payments, assessed at 20% of the preceding month's income, in any month in which the prisoner's account exceeds $10, and forward those payments to the Court until the entire filing fee is paid. See 28 U.S.C. § 1915(b)(2).

Plaintiff is currently incarcerated in Clark County Detention Center. ECF No. 1 at 3. Plaintiff filed a declaration and submitted a certified copy of the trust fund account statement (or institutional equivalent), obtained from the appropriate official of the Clark County Detention Center, for the 6-month period immediately preceding the filing of his complaint. He swears he has no income other than the money currently in his prison account. I grant Plaintiff's IFP application.

        II.        Whether Plaintiff's Complaint States a Plausible Claim

                a.  Legal Standard

Because I grant Plaintiff's application to proceed In Forma Pauperis, it must review Plaintiff's complaint to determine whether the complaint is frivolous, malicious, or fails to state a plausible claim. 28 U.S.C. § 1915(e)(2)(B). Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the [Plaintiff] is entitled to relief." Rule 8 ensures that each Defendant has "fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The Supreme Court's decision in *Ashcroft v. Iqbal* states that to satisfy Rule 8's requirements, a complaint's allegations must cross "the

line from conceivable to plausible." 556 U.S. 662, 680 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, (2007)).  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. A complaint should be dismissed under Rule 12(b)(6), "if it appears beyond a doubt that the Plaintiff can prove no set of facts in support of her claims that would entitle him to relief." *Buckey v. Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  If the Court dismisses a complaint under § 1915(e), the Plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

   b. Complaint

Plaintiff's Complaint is against Officer L. Cooke, District Attorney Steven B. Wolfson, Brianna Stutz, Brittni Griffith, Officer J. Owens, and Detective K. Mead. ECF No. 1-1. Plaintiff alleges violations of the First Amendment, Eighth Amendment and Fourteenth Amendment. *Id.* at 3. Plaintiff alleges Officers pulled him over for traffic violations on February 2, 2019, April 20, 2021, and July 7, 2021. *Id*. at 3 and 4. Plaintiff alleges on each occasion that Officers seized his Cultural and Religious Identification cards and charged him with Felony Crimes for Possession of Cultural Identification. *Id*. at 2. The Officers seized Plaintiff's identification cards because Plaintiff's legal name, "Darnell Q. Brockington," differs from the name on the identification cards, "Rauf Born Divine Bey". *Id*. at 2, 3 and 4.

Plaintiff alleges that on December 11, 2019, Officer O'Keefe and Officer Jacobs pulled Plaintiff over for driving 48 MPH in a 45 MPH zone. *Id*. at 3. During the incident, Detective Mead arrived on the

scene and seized Plaintiff's Indigenous Religion Identification as Plaintiff's legal name did not match the name on the card. *Id*. Detective Mead told Plaintiff he needed a Court ordered name change in order to retrieve his identification card. The Plaintiff alleges that the seizure of Indigenous Religion Identification card violates his First Amendment right to freedom of religion. *Id*.   Following the incident, on February 28, 2021, Plaintiff, allegedly, filed a Name Declaration, Proclamation of Free National Name and Appellation and Tribal Affiliation with the United Washitaw De Dugdahmoundyah Muir Nation, Indigenous People Organization Affiliation, and a Common Law Name Correction Notice of Intent. *Id*. at 2.

On March 13, 2021, at Plaintiff's Second Preliminary Hearing, Plaintiff alleges Brianna Stutz testified that Plaintiff gave her paperwork regarding his Common Law Name Change. *Id*. at 5. However, Plaintiff claims Stutz failed to submit or review the paperwork for his Common Law Name Change. *Id*. Plaintiff also alleges, at this hearing, Stutz and District Attorney Wolfson filed for a bail demand against Plaintiff based on a previous misdemeanor citation against him in California. *Id*.

Plaintiff alleges, on the March 13th hearing, Officer Owens testified he believed Plaintiff's identification cards to be Sovereign information despite, previously listing Plaintiff's Indigenous Religion cards in his report as Indigenous Religious Property.

Plaintiff alleges, on April 20, 2021, Officer L. Cooke pulled him over for a moving violation. *Id*. He alleges Officer Cooke seized his Washitaw Identification, World Identification card, and CashApp Bank card because Plaintiff's legal name differed from the name on the cards. *Id*. The officers placed Plaintiff under arrest and referred to him as a "Sovereign Citizen" rather than a "Moorish National". *Id*. Plaintiff alleges he falls under the latter category. *Id*.

Plaintiff alleges on July 21, 2021, Officer Jenkins pulled Plaintiff over as he was pulling into a gas station. Officer Jenkins asked Plaintiff if he had a driver's license, to which Plaintiff responded he did not. *Id*. at 4. Officer Jenkins asked Plaintiff to step out of his vehicle. *Id*. Officer Jenkins asked

1  Plaintiff if he had any identification, to which Plaintiff replied, he only had his Tribal identification card.
2  *Id*. Officer Jenkins searched Plaintiff and found the Tribal identification card in his pocket. *Id*. Officer
3  Jenkins ran Plaintiff's information and determined Plaintiff gave him false identification as his name is
4  Darnell Brockington, not the name listed on the Tribal identification card. *Id*. Plaintiff states in his
5  Complaint that Officer Jenkins seized Plaintiff's "Indigenous Religious Property" and placed him under
6  arrest for giving an officer false information. *Id*.

          i.        First Amendment claim

8  The First Amendment guarantees the right to the free exercise of religion. U.S. Const. Amend. 1.
9  The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting
10 an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const., Amend. 1. The First
11 Amendment "forbids government regulation of religious beliefs." *Employment Division v. Smith,* 494
12 U.S. 872, 877 (1990). The Free Exercise clause, "does not relieve an individual of the obligation to
13 comply with a law that incidentally forbids (or requires) the performance of an act that his religious
14 belief requires (or forbids)[.]" *Employment Division v. Smith* at 879 (quoting *United States v. Lee,* 455
15 U.S. 252, 263 (1982)).

16 In Nevada it is illegal to possess fake identification to establish false status, identity, or
17 membership. NRS § 205.465(1).  A person who possesses personal identifying information in violation
18 of subsection 1 is guilty of a category E felony. NRS § 205.465(4). In *Fayer v Vaughn,* the Ninth Circuit
19 found possession and use of unofficial identification acquired from a non-governmental entity was
20 sufficient for person of reasonable caution to believe the individual possessed documents or personal
21 identifying information "for the purpose of establishing a ... false identity for himself" in contravention
22 of NRS §205.465. 649 F.3d 1061, 1063 (9th Cir. 2011).

23 Under NRS § 171. 123(1), or the "stop and identify" law, "Any peace officer may detain any
24 person whom the officer encounters under circumstances which reasonably indicate that the person has

5

committed, is committing or is about to commit a crime." Under NRS 171,123(3) "… Any person so detained shall identify himself or herself…". In *Hibel,* the Supreme Court clarified that in every *Terry* stop[1] a request for identification should be reasonably related in scope to the circumstance which justified the stop. *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 189 (2004). For example, in *Hayes*, the Court suggested that *Terry* may permit an officer to determine a suspect's identity by compelling the suspect to submit to fingerprinting only if there is "a reasonable basis for believing that fingerprinting will establish or negate the suspect's connection with that crime." 470 U.S., at 817, 105 S.Ct. 1643. In Nevada, individuals are required to have a "valid license as a driver" while operating a motor vehicle. NRS §483.230. Religious identification cards are not listed as valid form of license under Nevada law. NRS § 483.064-65.

From Plaintiff's Complaint, it is not clear if Plaintiff initially handed over his religious identification card to the officer; if he was driving with or without a license; or how the officers discovered that Plaintiff's legal name differs from the name on his religious identification cards. Plaintiff's allegations are vague. Plaintiff's complaint does not give each Defendant fair notice of Plaintiff's claims and the grounds upon which they rest per Rule 8.

Plaintiff's Complaint indicates that a crime was already committed by Plaintiff as he was pulled over for a traffic violation, and this violation led to the search and seizure of his property. Under Nevada law, Plaintiff was required to drive with a valid driver's license, therefore asking Plaintiff for his license as identification was reasonably related in scope to the circumstances. Plaintiff's religious identification and practices do not relieve him of the obligation to abide by facially neutral laws NRS §205.465 and NRS §483.230. I dismiss this claim without prejudice.

      ii.   Eighth Amendment claim

---

[1] A *Terry* stop must be justified at its inception and "reasonably related in scope to the circumstances which justified" the initial stop. *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

The Eighth Amendment states "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. 8. "In setting bail, the State may take into account compelling government interests, such as public safety or the likelihood of flight to ensure a Defendant's presence at trial." *Victory v. Lewis,* C 03–1061 JSW (PR), 2008 WL 3926406 (N.D.Cal. Aug. 25, 2008) (citing *Stack v. Boyle,* 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (fixing of bail must be based on standards relevant to purpose of assuring Defendant's presence)). "The plain meaning of 'excessive' does not require that it be beyond one's means, only that it be greater than necessary to achieve the purposes for which bail is imposed." *Galen v. Cnty. of Los Angeles,* 477 F.3d 652, 661–62 (9th Cir.2007) (citing Salerno, 481 U.S. at 754, 107 S.Ct.2095). To properly state a § 1983 claim the Plaintiff must allege that the Defendants were the "actual and proximate cause of his bail enhancement." *Galen v. Cnty. of Los Angeles,* 477 F.3d 652, 663 (9th Cir.2007).

Regarding "cruel and unusual punishment," the Eighth Amendment does not give rise to a claim by a pretrial detainee. *Graham v. Connor,* 490 U.S. 386, 398–99, 109 S.Ct. 1865, 1873, 104 L.Ed.2d 443 (1989) (stating that the "Eighth Amendment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.") (quoting *Ingraham v. Wright,* 430 U.S. 651, 671, n. 40, 97 S.Ct. 1401, 1412, n. 40, 51 L.Ed.2d 711 (1977)). The Eighth Amendment is only implemented post-conviction, when the injury suffered is "part of the total punishment to which the individual is being subjected for his crime." *Ingraham,* 430 U.S. at 669.

Plaintiff's "excessive bail" claim simply states that Stutz and Wolfson filed a bail demand at the March 13 hearing, however Plaintiff fails to state in his Complaint whether this demand was granted; what bail was set at; or if bail was enhanced by the actions of Stutz or Wolfson. Furthermore, Plaintiff fails to state or explain this claim any further beyond simply stating that the Defendants "…filed for a bail demand". Even if properly stated, an Eighth amendment "cruel and unusual punishment" claim may not be brought for injury suffered as a pretrial detainee. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124

(9th Cir. 2018). The Court finds that Plaintiff's Eighth Amendment "excessive bail" and "cruel and unusual punishment" claims fail.

Plaintiff has not stated viable Eighth Amendment or Section 1983 claims against Defendant Stutz regarding her handling of his Common Law Name Change paperwork. Plaintiff's claims, at most, appear to be predicated upon such Defendants' alleged failure to properly process paperwork. However, a government official's processing of paperwork, without more, cannot serve as a basis for Section 1983 liability. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.) (due process not violated simply because Defendant failed properly to process grievances submitted for consideration). Plaintiff's allegations are vague. Plaintiff's complaint does not give each Defendant fair notice of plaintiff's claims and the grounds upon which they rest per Rule 8.  Because Plaintiff failed to allege Eighth Amendment violations by Stutz or Wolfson, this claim fails. I dismiss this claim without prejudice.

Under a liberal reading, Plaintiff's "cruel and unusual punishment" claim may be interpreted as unlawful incarceration. Under *Heck v. Humphrey*, to recover damages for an unconstitutional conviction or imprisonment, a § 1983 Plaintiff must prove the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a Federal Court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). If Plaintiff amends, he must show that his conviction has been reversed if he intends to bring a claim for unlawful incarceration.

       iii.  Fourteen Amendment claim

The Fourteenth Amendment prohibits state action that "deprive[s] any person of life, liberty, or property, without due process of law[.]…"U.S. Const. Amend. 14. Plaintiff's pleading offers no "factual content that allows the Court to draw the reasonable inference" that any individual person acted unlawfully under the circumstances. See *Iqbal,* 556 U.S. at 678. Furthermore, the actions of Officer Jenkins, who is not listed as a Defendant in Plaintiff's Complaint, may not be considered the actions of

8

1 any of the named Defendants. Because Plaintiff failed to plead that any of the named Defendants
2 violated his Fourteenth Amendment right in this claim, his Fourteenth Amendment claim fails. I dismiss
3 it without prejudice.

### a. Younger Doctrine

The United States Supreme Court has found that absent extraordinary circumstances, Federal Courts must not interfere with pending state criminal prosecutions, even if the civil litigant alleges violations of his constitutional rights. *Younger v. Harris*, 401 U.S. 37, 43, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). Pursuant to the Younger abstention doctrine Federal Courts may not stay or enjoin pending State Criminal Court proceedings, nor grant monetary damages for constitutional violations arising from them. *Mann v. Jett*, 781 F.2d 1448, 1449 (9th Cir. 1986). "Younger principles apply to a claim for damages based on constitutional challenges which can be asserted in pending state proceedings that implicate important state interests, and that the correct disposition is to defer — not to dismiss — when damages are at issue." *Gilbertson v. Albright*, 381 F.3d 965, 982 (9th Cir. 2004). Once the state proceeding has run its course, the Court can decide whether the damages action should proceed. "If the Plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, [*Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383, (1994)] will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit." *Wallace*, 549 U.S. at 394.

Plaintiff is currently incarcerated, but it is not clear from his complaint whether any criminal charges related to the arrest he describes are pending against him. Plaintiff seeks monetary damages related to what he says happened during his arrest. I dismiss Plaintiff's complaint without prejudice with leave to refile on these grounds. If he amends, he must show whether the criminal charges related to his arrest have been resolved or are still pending.

### iv. The Missing Defendant

A "[Plaintiff] must plead that each government-official Defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; see also *Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se Plaintiff s must "allege with at least some degree of particularity overt acts which Defendants engaged in" to state a claim). Here, Plaintiff fails to state when or how Brittini Griffith violated the Constitution. Plaintiff has not alleged how or when Brittini Griffith personally participated in the any of the incidents stated in the Complaint. Plaintiff has not stated a claim against Brittini Griffith. I dismiss his claims against Griffith without prejudice.

III.     Notice Regarding Duplicative Cases

Plaintiff has at least two other Complaints that are similar to his current claim. *See, Brockington v. State of NV DA*, Case No. 2:22-cv-00787-CDS-DJA (D. Nev. May 18, 2022); *see also*, *Brockington v. Wolfson et al.*, 2:22-cv-00816-JAD-DJA (D. Nev. May 23, 2022). I caution Plaintiff that filing multiple duplicative actions boarders on vexatious conduct.

ACCORDINGLY,

I ORDER that Plaintiff Brockington's application to proceed in forma pauperis (ECF No. 1) is GRANTED.

I FURTHER ORDER that Plaintiff's complaint (ECF No. 1-1) is DISMISSED WITHOUT PREJUDICE.

I FURTHER ORDER that Plaintiff has until Monday, July 25th, 2022, to file an amended complaint addressing the issues discussed above.  Failure to timely file an amended complaint that addresses the deficiencies noted in this Order may result in a recommendation for dismissal with prejudice.

I FURTHER ORDER that if Plaintiff files an amended complaint, the Clerk of the Court is directed NOT to issue summons on the amended complaint.  I will issue a screening order on the

amended complaint and address the issuance of summons at that time, if applicable. See 28 U.S.C. § 1915(e)(2).

I FURTHER ORDER that pursuant to 28 U.S.C. § 1915, as amended by the Prison Litigation Reform Act, the Nevada Department of Corrections will forward payments from the account of Darnell Q. Brockington #7525810 to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action. If this action is dismissed, the full filing fee must still be paid pursuant to 28 U.S.C. § 1915(b)(2).

I FURTHER ORDER that if the plaintiff is transferred into the custody of the Nevada Department of Corrections, the CCDC Accounting Supervisor is directed to send a copy of this Order to Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702, and indicate the amount that plaintiff has paid towards his filing fee so that funds may continue to be deducted from his account.

I CAUTION Plaintiff that continuing to file duplicative and/or frivolous lawsuits may result in adverse consequences, including possible sanctions or a finding that he is a vexatious litigant.

## NOTICE

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch.*

*Dist.*, 708 F.2d 452, 454 (9th Cir. 1983). Pursuant to LR IA 3-1, Plaintiffs must immediately file written notification with the Court of any change of address. The notification must include proof of service upon each opposing party's attorney, or upon the opposing party if the party is unrepresented by counsel. Failure to comply with this rule may result in dismissal of the action.

    IT IS SO ORDERED.

    DATED this 23rd day of June 2022

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE